CAMBRIA COAL MINING Co. *v.* TRAVELERS' INDEMNITY Co.*

(*Knoxville.* September Term, 1921.)

INSURANCE. Indemnity policy held not to cover explosion injuring
employee; ''boiler.''

A policy of insurance, indemnifying master for losses due to injury
to servant in the event of explosion of a boiler, defined as a re-
ceptacle in which steam is generated, "including the stop valve
nearest the boiler," cannot be construed to include a nipple screwed
into the outlet of the stop or blow-off valve, which was simply
a connection between the stop valve and the ell below.

Case cited and approved: Hartford Steam Boiler Inspection & Ins.
Co. v. Pabst Brewing Co., 201 Fed. 617.

---

. FROM KNOX.

---

Appeal from the Chancery Court of Knox County.—
HON. CHAS. HAYS BROWN, Chancellor.

FOWLER & FOWLER, for plaintiff.

FRANTZ, MCCONNELL & SEYMOUR, for defendant.

MR. JUSTICE HALL delivered the opinion of the Court.

This action was instituted by Cambria Coal Mining
Company against the Travelers' Indemnity Company,
in the chancery court of Knox county, to recover of the
defendant the sum of $1,000 paid to one J. H. Martin,

---

*As to what injuries are covered by employers' indemnity insur-
ance, see notes in 30 L. R. A. (N. S.), 1192 and L. R. A. 1915C, 155.

an employee of Cambria Coal Mining Company, in settlement of a claim for personal injuries sustained by the said Martin in an alleged boiler explosion occurring at its plant at Briceville, Anderson county, Tenn., on January 25, 1920.

The bill predicates complainant's right of action upon what is known as a "steam boiler policy" issued to it by the defendant, by the terms of which the defendant agreed:

"To indemnify the assured by payment to him or in his behalf as the case may be in the event of an explosion of any such boiler for his loss or damage directly caused thereby as follows:

"For bodily injuries, including death at any time resulting therefrom, sustained by any person or persons, for which the assured is legally liable in damages."

The policy covered three horizontal tubular steam boilers used by complainant in the operation of its plant. The defendant answered the bill, and admitted entering into a contract of insurance with complainant as alleged in the bill, and that said contract was in full force and effect on January 25, 1920, at which time Martin sustained his injuries, but denied that any liability had been created against it in favor of complainant as a result of said injuries to Martin under the terms of said policy.

The answer further averred that the policy upon which complainant seeks to recover of defendant carriers on page 1, under the head of "Definitions," the following language:

"A. 'Explosion' shall mean the sudden rupture or sudden collapse of a boiler or of its furnace, flues or other parts, caused by pressure of steam. 'Boiler' shall

mean any receptacle or vessel enumerated and described in said declarations as such, in which steam is generated or used and shall include the steam, feed and blow-off piping to and including the stop valve nearest the boiler in any of such piping, also the water column, safety valve and all steam and water gauges.''

The answer admitted that on or about January 25, 1920, a pipe or nipple beyond the stop valve in the blow-off pipe nearest one of the boilers covered by the policy of insurance blew out, permitting the hot water in said line to escape and injure said J. H. Martin, but that the blow-out of this pipe occurred at a point wholly beyond the point covered by the terms of said policy of insurance.

The cause was heard by the chancellor upon the pleadings and proof, and complainant's bill was sustained and a decree entered in its favor against the defendant for the sum of $1,000, the amount which it was forced to pay Martin on account of injuries sustained by him as a result of said accident, with interest from the date of the filing of the bill, making the total amount of complainant's recovery the sum of $1,017. From this decree defendant appealed to this court, and has assigned the action of the chancellor for error.

It is undisputed that Martin, one of complainant's employees, sustained injuries as a result of a pipe or nipple beyond the stop valve in the blow-off pipe nearest one of the boilers pulling out and permitting the hot water from said blow-off pipe to escape and be thrown against him while in the performance of his duties about said boiler. It is also undisputed that the complainant was forced to pay Martin $1,000 on account of said

injuries, and that this amount was fair and reasonable, and defendant's liability is not challenged on this ground, but solely upon the ground that the pulling out of the pipe or nipple occurred at a point wholly beyond the point covered by the terms of the policy.

The evidence shows that the blow-off pipe was attached to the bottom of the boiler, and was used to clean the inside of the boiler. By means of this blow-off pipe, which extended from the bottom of the boiler several feet, and through one of the center walls of the building, mud, scales, and other foreign substances were blown from the boiler. Martin, at the time the accident occurred, was turning the stop or blow-off valve on said pipe nearest the boiler for the purpose of cleaning the boiler, but before he had succeeded entirely in turning the valve stem to the point desired and necessary to accomplish this purpose, the nipple, which was screwed into the valve outlet, pulled out, permitting a rush of steam to the ground below, which threw mud and cinders into his face and eyes, resulting in permanent impairment of his sight. The evidence shows that after the first rush of steam to the ground and the blowing of the cinders into the face of Martin, the pressure of steam caused the other connection of the valve to unscrew to a point described by the witnesses as a "turn of about a quarter," so that the outer connection or opening beyond the boiler was turned from a perpendicular position, in which it rested before the nipple pulled out, to a horizontal position, and that this caused the mud and steam that had not yet escaped to blow against the body of Martin and knock him down against one of the other boilers and injure his arm

The evidence shows that the cause of the pulling out of the nipple was the failure to properly anchor the blow-off pipe at the end, on account of which it was permitted to vibrate, and the imperfect manner in which the nipple had been screwed into the outlet of the stop or blow-off valve, it only being inserted to the depth of two and one-half threads. The evidence shows that the nipple in question was no part of the stop valve, but was simply a connection between the stop valve and the ell below. It is therefore clear that the language of the policy "to and including the stop valve" cannot be construed to include this nipple as a part of the appliances of the boiler covered by said policy.

The material clause of said policy has hereinbefore been quoted in stating the defense relied on by the defendant in its answer, and in that portion of said clause which defines the word "boiler" it is stated that—"boiler" "shall mean any receptacle or vessel enumerated and described in said 'declarations' as such, in which steam is generated or used and shall include the steam, feed and blow-off piping *to and including the stop valve nearest the boiler in any of such piping* (the italics are ours), also the water column, safety valve and all steam and water gauges."

It is quite clear from this language that no point below the stop valve along said line of piping is included by the terms of the policy. The nipple, which pulled out and caused the injury to Martin, was below the stop valve, and was clearly not covered by the policy. The undisputed evidence shows that the stop valve was not damaged in any way, and was continued in use after

the explosion without any repairs being made on it. The parties had the right to contract and define in the policy of insurance what portion of the attachments and appliances belonging to said boiler should be covered by the policy, and, having done so by clear and unambiguous language, they must be held bound by their contract.

The case of *Hartford Steam Boiler Inspection & Insurance Co.* v. *Pabst Brewing Co.*, 201 Fed., 617, 120 C. C. A., 45, Ann. Cas., 1915A, 637, cited and relied on by complainant, is not controlling of the suit under consideration. That case involved the question:

First. Whether or not there had been three separate and distinct explosions or only one? The terms of the policy provided that the assured's recovery should not exceed $50,000 for loss resulting from any one explosion. The boilers involved were three in number. It was the contention of the insured that all of said boilers were exploded by a single explosion, while the assured contended that there were three separate and distinct explosions.

Second. It was contended by the brewing company that the insurance company had agreed to furnish certain inspection service and report to it any dangerous conditions affecting the safety of the boilers insured, and that it had negligently failed to do this, and by reason of such failure it was liable to the brewing company. The court did not have under consideration any question analogous to the question involved in the instant cause.

It results that the decree of the chancellor will be reversed, and complainant's bill dismissed, with costs.