**EMPLOYERS' INDEMNITY CORPORATION v. FELTER et al. (No. 6765.)**

(Court of Civil Appeals of Texas. Austin. June 4, 1924. Rehearing Denied July 2, 1924.)

1. **Master and servant** ⟨⟿398—Jurisdiction under Compensation Act dependent on notice of injury.

Courts do not have jurisdiction of claims under the Compensation Act, except by appeal from the Industrial Accident Board, which acquires jurisdiction only when claimant complies with Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43, requiring notice of injury.

2. **Master and servant** ⟨⟿401—Allegations of petition by compensation insurer held to plead jurisdiction of Industrial Accident Board.

In suit by indemnity company to set aside award of compensation by Industrial Accident Board, petition alleging that board claimed or asserted jurisdiction and entered its final ruling and award held sufficiently to plead proceedings before board so as to make it unnecessary for claimants to plead same facts in answer except on question of delay for more than six months after death in giving board notice of claim.

3. **Evidence** ⟨⟿83(1) — Presumed Industrial Accident Board conducts its business in lawful manner.

There is a presumption that Industrial Accident Board conducts its business in lawful manner.

4. **Master and servant** ⟨⟿405(3)—Finding compensation claimant learned of policy less than six months before filing claim sustained.

Finding of jury that compensation claimant learned that city carried policy of workmen's compensation insurance for employees less than six months before filing claim with Industrial Accident Board, under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43, held sustained by evidence.

5. **Insurance** ⟨⟿435—Policy held to apply to meter reader killed when riding own motorcycle necessary to his duties.

Where general terms of policy included all employees engaged in operation of electric light plants, including drivers, extension of lines, maintenance and installation, operation of waterworks and pumping station, etc., and insured city against loss under Compensation Law from bodily injuries by employees while on duty, notwithstanding provision that it should not apply to injuries resulting from ownership or maintenance of automobile or motorcycle, held that, where meter reader used his own motorcycle in performance of duties, and was allowed monthly sum therefor by city, injury to him when so using it was within policy.

6. **Insurance** ⟨⟿157—Employer engaged in separate kinds of business may insure employees in one kind only.

Where employer engages in two separate and distinct kinds of business, he may insure employees in one and not cover the other.

---

⟨⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Insurance** ⊛435—**Employees in service foreign to that covered by policy cannot claim its benefits.**

Where policy covers particular employment, those engaged by same employer, but in service foreign to and not connected with employment covered by policy, cannot claim its benefits.

**8. Master and servant** ⊛351—**Compensation Law may not be accepted as to part of employees in particular employment.**

The Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) is not construed to permit employer to take advantage of it as to part of his employees engaged in particular employment and reject it as to others in same employment because they discharge duties in slightly different manner.

**9. Master and servant** ⊛358—**No election in suing third party for death without knowledge of workmen's compensation policy.**

Where widow of city employee, killed in course of employment, did not know that city carried a workmen's compensation policy until after she had recovered judgment in damage suit against third parties for the death, there was no election of remedies under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—47, barring recovery of compensation.

**10. Election of remedies** ⊛7(1)—**No election, unless two inconsistent remedies exist and party knows thereof.**

There can be no election, unless two inconsistent remedies exist, and before party can be held to have elected, or estopped to assert different remedy, he must have known at time he proceeded of existence of more than one available remedy.

**11. Master and servant** ⊛405(3)—**Finding compensation claimant did not know of insurance sustained.**

Evidence *held* to sustain finding that compensation claimant was unaware that city carried workmen's compensation insurance at time she brought action against automobile owners for death of her husband in collision.

**12. Master and servant** ⊛375(2)—**Injury to meter reader while riding motorcycle compensable as in "course of employment."**

Meter reader, having no fixed hours or place of labor, and using his own motorcycle, for which city allowed monthly sum, killed by automobile collision on streets of city, *held* in "course of employment" under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82, and his death compensable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

**13. Master and servant** ⊛391¼, New, vol. 10A Key-No. Series—**Interest properly allowed on compensation payments.**

Interest *held* properly allowed on each weekly payment of compensation claim from time same was due.

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by the Employers' Indemnity Corporation against Mrs. George R. Felter and others. Judgment for defendants, and plaintiff appeals. Affirmed.

T. H. McGregor, A. L. Love, and E. C. Gaines, all of Austin, for appellant.

Dickens & Dickens and King & York, all of Austin, for appellees.

BAUGH, J. In 1918 the city of Austin carried a workman's compensation insurance policy with the Employers' Indemnity Corporation. On October 7, 1918, George R. Felter, then employed by the city of Austin as a meter reader in the water and light department, received injuries in a collision with an automobile at or near the corner of Seventeenth street and Congress avenue, from which he died a few days later. On March 30, 1923, the Industrial Accident Board of Texas, under said compensation policy, awarded to Mrs. George R. Felter and her two minor children, John Vincent Felter and Georgia Ruth Felter, whose guardian she was, compensation at the rate of $15 per week for 360 weeks from and after October 7, 1918, with interest on each weekly payment as it accrued. This award also provided for deduction of a part thereof as attorney's fees. Appellant gave due notice of its unwillingness to abide by this award, and filed suit to set it aside.

As grounds for setting aside said award appellant, plaintiff below, alleged that in September, 1920, Mrs. Felter had sued Edgar Barkley and Jeffie Barkley for damages for the death of her husband, which suit she later prosecuted to final judgment, her cause of action being based upon the same injuries for which the compensation was awarded by the Industrial Accident Board; that at the time she filed said suit and at the time of final judgment therein Mrs. Felter knew of the compensation policy and of her right to proceed thereunder, but that she elected to sue the parties alleged to have been responsible for the collision for damages. Appellant also alleged that by reason of her delay in seeking compensation and in suing for damages first, which suit was not finally disposed of until April, 1922, Mrs. Felter has permitted limitation to run against appellant and in favor of the Barkleys, and has thus precluded appellant from suing them and reimbursing itself for such sums as it might be compelled to pay under said insurance policy.

In their answer appellees pleaded that both appellant and the city of Austin had immediate notice of Felter's death; that appellant failed to report the accident to the Industrial Accident Board as required by law; that Mrs. Felter knew nothing of the existence of said policy when she sued the Barkleys; that her first information thereof was obtained on the trial of said cause; that pur-

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

suing such information she thereafter discovered the existence of said policy, and that appellant was liable thereunder; that immediately after such discovery she filed her claim with the Industrial Accident Board; and that appellant had fraudulently concealed from her the existence of its policy with the city of Austin—all of which she alleged were good reasons for not filing her claim with the Board within six months of the date of her husband's death; that not knowing of appellant's liability, through no fault of hers, when she sued the Barkleys, such suit could not amount to an election by her nor preclude her from applying to the Industrial Accident Board for compensation.

The case was submitted to a jury on special issues, and they found as follows: That the average weekly wage of George R. Felter during the year preceding his death was $25.-38; that he received the injuries resulting in his death in the course of his employment; that Mrs. Felter had no actual knowledge or notice at the time she filed her damage suit against the Barkleys that the city of Austin carried a workmen's compensation policy covering the employment in which her husband was engaged; and that she first had actual knowledge or notice of the existence of said policy in July or August, 1922.

Based upon these findings the court rendered judgment for Mrs. Felter and her two minor children against appellant for $15 per week for 360 weeks beginning October 7, 1918, with interest at 6 per cent. on each weekly payment from the date it became due; and set aside to her attorneys under her contract with them one-third of the amount recovered. From this judgment the insurance company has appealed.

### Opinion.

Appellant brings this case before us for review under nine assignments of error upon which it bases six propositions of law. The first of these is that appellees, defendants below, failed to allege and prove that their claim was filed with the Industrial Accident Board within six months of the death of George R. Felter, and failed to show good cause for delay of more than six months after they allege they knew of said insurance; that after suit was filed the proceeding became a trial de novo with burden of proof on claimant, and the proceedings before the Industrial Accident Board became a jurisdictional question requiring appellees to plead same fully.

Section 4a, part 2, of the Employers' Liability Act, being article 5246—43, Vernon's 1918 Supp., reads as follows:

"Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this act shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty (30) days after the happen-ing thereof, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity within six (6) months after the death or the removal of such physical or mental incapacity. Provided that for good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the Board."

[1, 2] The courts do not have jurisdiction of claims under the Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, § 5246—1 et seq.) except by appeal from the award made by the Industrial Accident Board, and the Board acquires jurisdiction of such claim only when the claimant complies with the statute above quoted. Had this suit been filed below by the claimants, undoubtedly they would have been required to allege more facts than they did in order to show jurisdiction. Western Indemnity Co. v. Teonnis (Tex. Civ. App.) 250 S. W. 1102. In the instant case, however, the insurance company was plaintiff. In paragraph 2 of its petition appellant does allege that "on the 30th day of March, 1923, the Industrial Accident Board having in some manner claimed or asserted jurisdiction in the premises, which this plaintiff alleges it did not have, made and entered what is termed its final ruling and decision in what is termed an award, etc."; but it sets out fully the style and number of said award and its terms, and alleges that "a certified copy of said award is filed in this court, among the papers of this case for jurisdictional purposes." In paragraph 3 of said petition plaintiff pleaded the following:

"This plaintiff is an interested party to said award, because, if the same is not set aside by this honorable court, it will be compelled to pay the same, and as such interested party this plaintiff within 20 days after said award was made and entered gave notice in writing by personal service to the Industrial Accident Board of the state of Texas, and to each and all of the above named defendants that it was not willing to and would not abide by said final ruling, decision and award of said Board and that it would within 20 days after the serving of said notices file suit in a court of competent jurisdiction in Travis county, Tex."

Only in the general language quoted does the appellant deny the jurisdiction of the Board over the claim. It does not specify on what grounds the Board had no jurisdiction, and seeks to have the award of the Board set aside on other than jurisdictional grounds. Though denying in a general way the jurisdiction of the Board over the claim, appellant recognized the award as such, gave notice of appeal therefrom, and seeks to nullify such award, not because of a want of jurisdiction on the part of the Board to make it, but on the ground of election of remedies

by appellees. We think appellant's petition sufficiently pleaded the proceedings before the Board to make it unnecessary for appellees to further plead the same facts in their answer, except on the question of their delay for more than six months after Felter's death in giving the Board notice of their claim. On this point the appellees pleaded at length as hereinabove set out. The time when Mrs. Felter first learned of the existence of the policy became an issue in the case, and the jury found it to be "July or August, 1922." She testified without objection by appellant that thereafter "in the fall we filed the claim and had a hearing before the Board."

Appellant cites us to numerous cases in support of its contention, many of them being cited in the case of the Georgia Casualty Co. v. Ward (Tex. Civ. App.) 220 S. W. 380. The Ward Case, and Poe v. Continental Oil & Cotton Co. (Tex. Civ. App.) 211 S. W. 488, 231 S. W. 717, cited by appellant, arose prior to the amendment of 1917 (Vernon's Ann. Civ. St. Supp. 1918, § 5246—43). This amendment added to the law then in force the following:

"Provided that for good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

[3] Prior to this amendment the duty of filing such claim within six months after the injury or death was absolute. The same was true under the statutes of Illinois and Michigan, in the cases cited by appellant from those states. The Legislature did not define what should constitute a "meritorious case" but left that to be determined by the Board in each particular instance. The amendment is significant in vesting the Board with this discretionary power. Prior to its adoption failure to file such claim within six months precluded a suit thereon under the Compensation Act. Such failure does not necessarily do so now. In the instant case the claim was not filed within six months after Felter's death, nor is there any allegation as to when it was filed, but appellant did in its pleadings set out the style and number of said claim and the award of the Board thereon. This was sufficient. As stated in Western Indemnity Co. v. Toennis, supra, in which case writ of error was refused by the Supreme Court:

"The Board could only acquire jurisdiction when a claim was filed before it. There is a presumption that the Board conducts its business in a lawful manner. Therefore the necessary intendment of appellant's allegation is that the claim was filed."

The proof showed that it was filed "in the fall" of 1922, within six months of the time when, according to the jury's findings, Mrs. Felter first learned of the policy. Clearly the Board considered that the facts made Mrs. Felter's claim a "meritorious case," authorizing them to waive the six months' notice provided in the statute.

[4] Appellant cites authorities in other states holding that facts conferring jurisdiction upon an Industrial Accident Board cannot be established by presumption, but must be conclusively shown; but we prefer to follow the holding in the Toennis Case, supra. Nor do we agree with appellant's contention that appellees alleged knowledge of the existence of said policy as early as April 13, 1922, and that they filed said claim more than six months thereafter. Paragraph 13 of appellees' pleadings contains the following: "The first information of the existence of a policy * * * came to these defendants upon the trial of said suit for damages, and, * * * when thoroughly investigated shortly after the date of said trial, in April, 1922, disclosed to these defendants for the first time * * *" that such policy had been written. The trial, not the investigation, occurred in April, 1922. The jury found that knowledge of the policy first came to Mrs. Felter in July or August, and there is evidence to sustain that finding. For the reasons stated, appellant's first assignment is overruled.

[5] Appellant's second assignment and proposition thereunder assert error of the trial court in refusing an instructed verdict in its favor under the following provision endorsed on the policy, to wit:

"The policy shall not apply to injuries or damage the result of the ownership, maintenance, or use of any automobile or motorcycle, unless such coverage is specifically covered by indorsement and proper premium collected therefor."

Felter was injured while riding his own motorcycle, and the use of this motorcycle was necessary in discharging the duties of his employment. The proof showed that two meter readers were employed in the city, and that the other one used a horse and buggy to cover his route. The city also allowed Felter extra pay of $10 per month for upkeep and operating expenses on his motorcycle.

According to the general terms of the policy it included all employees engaged in the "operation of electric light and power plants, including drivers, extension of lines, maintenance and installation of mechanical equipment; operation of waterworks and pumping stations; construction and maintenance of waterworks system, mains, laterals, pipes. * * * Also including drivers." The general provisions in the body of the policy also insure the city against loss under the Compensation Law of the state arising from bodily injuries, fatal or nonfatal, "by any employé or employés of the assured while on duty at the place and in the occupations and within the buildings or yards designated in said warranties, or upon the ways immediately and adjacent thereto provided for the use

of such employés, in and during the operation of the trade or business described in said schedule," etc. In the indorsement on said policy designating the place of employment the following language occurs:

"Near the I. & G. N. Railroad bridge in the city of Austin, Travis county, Tex., also all streets, alleys and all places whatsoever in the city of Austin, Tex., and all other places outside of the corporate limits of the city of Austin, Tex."

[6, 7] Appellant contends that, it being elective with the employer whether he will be bound by the Compensation Law and insure under it, such employer may also elect to insure a class of employees under one hazard but not to insure a class of employees coming under a different hazard. It is undoubtedly true that, where an employer engages in two separate and distinct kinds of business, he may insure his employees in one and not cover the other. U. S. Fidelity & Guaranty Co. v. Bullard Gin & Mill Co. (Tex. Civ. App.) 245 S. W. 720. In that case the employer operated a "cotton ginning and pressing business," and on the same premises near by other employees made boxes in a box factory operated by the same employer. The court held that a policy covering "cotton ginning and pressing" did not cover employees making boxes. Likewise, is it true that, where a policy covers a particular employment, those engaged by the same employer, but in a service foreign to or not connected with the employment covered by the policy, cannot claim the benefits of it. Such is the holding in the cases cited by appellant. See Hungerford v. Bonn, 183 App. Div. 818, 171 N. Y. Supp. 280; Bayer v. Bayer, 191 Mich. 423, 158 N. W. 109; Casualty Co. v. Industrial Com., 80 Okl. 7, 193 Pac. 974; Coal Co. v. Ins. Co., 144 Tenn. 469. 234 S. W. 323; Casualty Co. v. Martin (Tex. Civ. App.) 234 S. W. 710; Casualty Co. v. Industrial Com., 178 Cal. 491, 173 Pac. 993.

But these cases are not analogous to the case before us. Unquestionably Felter was one of the employees of the water and light department of the city included under the general provisions of the policy. His duties as a meter reader do not set him apart from other employees engaged in the operation of the water and light plants. Nor do the hazards of his particular employment do so. The evidence showed that the other meter reader engaged in identically the same employment as Felter, except that he used a horse and buggy for transportation, yet under appellant's contention this indorsement or exception relied on would protect one meter reader but not the other. Appellant does not bring itself under the rules laid down in the cases cited. If it be conceded that riding a motorcycle in performing his duties incurred an additional hazard calling for a larger premium on the policy, and such additional premium was not paid by the city, that was a matter between appellant and the city, and should not deprive the employee of protection under the policy nor defeat a recovery by his beneficiaries after his death. See Janes Contracting Co. v. Home Life & Accident Co., (Tex. Civ. App.) 245 S. W. 1004.

[8] The Compensation Law is not susceptible of such a construction as will permit an employer to take advantage of it as to a part of his employees engaged in a particular employment and reject it as to others in the same employment merely because they discharge their duties in a slightly different manner. As stated by the Massachusetts Supreme court, in passing upon the Compensation Law of that state, from which the Texas law is largely copied:

"If an employer becomes a subscriber he becomes a subscriber for all purposes as to all branches of one business with respect to all those in his service under any contract of hire. All the terms of the act are framed upon the basis that the employer is either wholly within or altogether outside its operation. There is no suggestion or any phrase warranting the inference that there can be a divided or partial insurance.

"The practical administration of the act renders it highly desirable that a single rule of liability should apply throughout any single business. Otherwise difficult and troublesome questions often might arise as to liability or nonliability dependent upon classifications of employees and scope of their duties. Litigation as to the line of demarcation between those protected by the act and those not entitled to its benefits would be almost inevitable. Instead of being simple, plain, and prompt in its operation, such division of insurance would promote complications, doubts, and delays." Wardwell D. Cox's Case, 225 Mass. 220, 225, 114 N. E. 281, 283.

[9] In its third assignment appellant insists that it was entitled to a judgment because appellees, with full knowledge of the policy, elected to file and thereafter prosecute to final judgment a suit for damages against the Barkleys, and, having so elected, their remedy could not recover against appellant.

Section 6a, part 2, c. 103, Acts of 1917, being article 5246—47, 1918 Supp. Vernon's Stats., reads, in part, as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the association for compensation under this act, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under the provisions of this act."

[10] There can be no election of remedies, unless two inconsistent remedies exist. Oil

Co. v. Guy (Tex. Sup.) 239 S. W. 697; 20 C. J. p. 37, et seq. But before a party can be held to have elected his remedy, or can be estopped from asserting a different remedy, he must have known at the time he proceeded of the existence of more than one available remedy. He cannot be held to have made a choice when he did not know that any such choice was open to him. Stephens v. Steckdaub, 202 Mo. App. 392, 217 S. W. 871; Sanford v. Cobe (Tex. Civ. App.) 172 S. W. 584; Jirou v. Jirou (Tex. Civ. App.) 136 S. W. 497; 20 C. J. 35–37; 9 R. C. L. p. 962.

[11] Was there such knowledge on the part of appellees of an alternative remedy as to constitute an election by them? We think not. Final judgment in the damage suit against the Barkleys was entered April 12, 1922. Under a proper charge defining what constituted actual knowledge or notice to Mrs. Felter that the city of Austin carried a workmen's compensation policy the jury found that she had no such notice when she filed suit against the Barkleys. In response to another question they found that she first received such notice in July or August, 1922. These findings are supported by the testimony of Mrs. Felter. The evidence was conflicting but clearly sufficient to go to the jury, and we will not disturb their findings. That being true, she cannot be held to have elected between two remedies when she did not know of the existence of one of them. The assignment is therefore overruled.

[12] The jury found that George R. Felter received the injuries from which he died "in the course of his employment." In its fourth and fifth assignments appellant asserts that as a matter of law under the undisputed facts he was not engaged "in the course of his employment" when injured, and was not, therefore, entitled to recover.

The Compensation Law states that the term, "injuries sustained in the course of employment," shall not include certain acts not pertinent here, "but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." See Vernon's 1918 Supp. art. 5246—82.

Congress avenue runs north and south through the city of Austin. Felter read all meters west of this avenue beginning with First street, including the west side of the avenue itself. He lived east of this avenue on Sabine street, which parallels Congress avenue, at Twenty-Fourth street. The city hall is situated one block west of the avenue on Eighth street. The injury occurred at the intersection of Seventeenth street and Congress avenue. It was the custom of Felter to begin with First street on the 1st of each month and work north, reading one or more streets each day, completing his territory in about 22 days. It usually took him two days to read the west side of Congress avenue. His territory was divided into routes made up of slips covering from 100 to 150 meters. On these slips occurred the name of the patron, street, and house number, date, etc., and as he read meters he filled in the data, and when he had completed a route, usually a day's work, he turned in these slips to the bookkeeper at the city hall. His time for reading, routing, etc., was within his own discretion. He customarily, but not always, took a new route, that is, a new book of slips, from the city hall when he turned in the one he had just finished reading. Mrs. Felter testified that her husband frequently brought "routes" of slips home with him as much as ten days ahead of time, and would arrange them, inserting slips for new meters, dates, etc., and that he did much of that work at home at night. Maddox, the other meter reader, testified that he had also taken out more than one day's route at a time, and that both he and Felter usually had on hand slips for new meters. According to his custom and the arrangement of his route Felter would have been reading meters at the time of his accident somewhere between Fourth street and Eighth street, some distance away from the place of the accident. W. L. Eyres, assistant water and light superintendent, testified that Felter had not taken out a route for the day on which he was injured. He also testified that "a meter reader was practically his own boss," and that "it sometimes happened that a meter reader did not complete his entire route in one day and finished up that part of his route as well as starting on a new one the next day." Felter's wife was ill the morning of the accident, which occurred on Monday, and he did not leave home until about 11 o'clock. He had sent the slips used on Saturday before to the city hall by a neighbor early that morning. Mrs. Felter testified that her husband had a route to read for that day, Monday, and that he had slips on hand that morning. If so, it was probably not necessary for him to go to the city hall before he began reading meters that day. A few minutes after he left home the accident occurred between his home and the city hall, or the place where he would ordinarily have read meters on that day.

Both parties have cited numerous cases on the point at issue. We think that the statute itself as to what constitutes or shall be included within the "course of employment" is about as explicit and clear as the decisions on the subject. In practically all of the cases cited the employee had a prescribed place or area of employment either indoors or apart from the streets, avenues, and high-

ways upon which the public usually travels. In the case of American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W 949, cited by appellant as the leading Texas case in point, Dinkins was an electrical engineer in the employ of the Magnolia Petroleum Company in its refinery at Beaumont. His duties were performed inside the plant. This refinery was inclosed with a fence. There was only one paved road leading from Beaumont to the refinery which was built jointly by the refinery and the county and entered the refinery grounds through a large gate, guarded by a watchman, and at which all employees registered as they entered and again as they left the plant. They could come and go by no other route. On the date in question Dinkins punched out at 12 o'clock at night, and left the refinery for home for rest, and when about three-fourths of a mile away from the plant on one of the streets of Beaumont, riding a motorcycle without a light, he was run over by an automobile and killed. In that case the court reviewed numerous authorities, and held as follows:

"This record shows that Dinkins did not receive the injury while engaged in or about the furtherance of the affairs of the Magnolia Petroleum Company, but, on the other hand, it plainly shows that he was bent on his own rest and refreshment, and that at the time of the injury the employer was exercising no control whatever over him; and, in addition to this, the petition shows clearly that the injury did not originate in the work. It was an injury that might happen to any person on any street, regardless of his employment.

"We have been unable to find any language in the laws of other states, similar to the language quoted, which defines what shall be regarded as an 'injury received in the course of employment.' The Legislature of Texas did not intend to adopt the judicial construction placed upon the terms of the acts by the other states, and this is proved by the fact that there is incorporated in the Texas act a definition of that term."

In the case of Hornburg v. Morris, 163 Wis. 31, 157 N. W. 556, relied upon by appellant, the Supreme Court of Wisconsin held that as to a pipeman and truckman of the fire department of the city of Milwaukee the streets of the city were not to be considered as the premises of his employer. Wisconsin, however, has the following statute:

"Every employé going to and from his employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing service growing out of and incidental to his employment."

In that case the duties of the employee were performed at the engine house and did not require him to go upon the streets. He was injured in a collision at street intersections, some distance away from his place of employment, while returning from his midday meal. The court in that case, however, laid down the following:

"That they [the streets] may, in many cases, constitute the premises of the city within the meaning of the act is quite obvious. As, for instance, in the case of an injury to a policeman or fireman while on duty in a street, or of a street employee in the performance of his duty thereon. But where the streets are used solely for the purpose of going to and from an employment carried on at a definite place other than a street, they are not the premises within the meaning of the act."

The leading cases by the Supreme Court of this state on this question seem to be I. & G. N. Ry. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219; Kirby Lbr. Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76; and Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402. In these latter cases the court reviews numerous decisions on the subject, and distinguishes them from the Dinkins Case, supra. In the Scurlock Case the Supreme Court held that the employee came under the provisions of the Compensation Act where killed one and one-half miles from his place of employment, in going home from a sawmill on a day when it did not run and while riding on a velocipede over a private way of defendant furnished him to go to and come from his home to his place of employment. But we think no useful purpose would be served by a detailed discussion of these and the numerous other cases cited by both parties. We think rather that each case must be determined largely upon its own particular facts.

Felter did not have any fixed hours or place of labor. "He was his own boss" as to many details. He worked early or late according to circumstances, the weather, etc. His place of employment was on, about, and over the various streets and alleys of his section of the city. In the performance of his duties he rode his motorcycle thereon constantly. His employment did not necessarily cease when he reached home at night nor when he reached any particular place in the morning. The testimony shows that he often did some of the work of his employment at home at night, and that he turned in his routes at the city hall at varying times in the day, and sometimes as late as 11 o'clock at night. Riding his motorcycle upon the streets, including the one upon which he was injured, at various times during the month was a part of and one of the risks and hazards incident to his employment. Though such motorcycle was not furnished him by the city, its necessity was recognized in allowing $10 a month for its upkeep. We think it not material whether he was reading meters at the particular place of the injury on that particular day. He was there not on a mission of his own. His wife, whose illness had kept him at home until 11 o'clock that morning, testified, "When he left home that morning I know what he was going to do; he was going to work some-

where in this part of town, the west part." And, whether or not he had reached the place where he began recording the actual meter readings, we think he was, in the language of the statute, "engaged in or about the furtherance of the affairs or business of his employer." As stated in the Dinkins Case, supra:

"It is the duty of this court to give to the terms of the act the utmost liberality of which they are legally capable, to the end that the beneficent purposes of the act may be effectuated."

This construction of the Compensation Law has been uniformly followed by the courts. Its humanitarian purposes not only authorize but require such liberal interpretation and application of it. We think clearly that Felter, at the time of his injuries, as found by the jury, was engaged "in the course of his employment" within the meaning of said act, and under the policy issued pursuant thereto. These assignments are therefore overruled.

[13] Appellant's sixth proposition under assignments 8 and 9 is that the finding of the jury that defendants did not know of the compensation insurance at the time they sued the Barkleys for damages is so against the overwhelming weight of the testimony that the trial court should have disregarded it in rendering judgment. We have read carefully all the testimony in the case and cannot agree with this contention. The testimony of Mrs. Felter, in support of the jury's findings, was positive. So was that of L. A. Orth, her brother-in-law. The testimony of W. L. Eyers, though in conflict with that of Mrs. Felter, was such, we think, as to at least leave her confused and uncertain about compensation insurance, if it did not leave her under the impression that the city carried only a liability insurance and not compensation insurance. The testimony of the several witnesses connected with the Industrial Accident Board was largely, if not altogether, negative in character and not necessarily contradictory to that of Mrs. Felter. The jury had these facts before them, as well as the various witnesses, and chose to believe Mrs. Felter, where her testimony was contradicted, which was their special prerogative. Without discussing the evidence in detail, suffice it to say that we find it sufficient to sustain the finding of the jury.

In its seventh proposition, appellant asserts fundamental error of the trial court in allowing interest on each weekly payment from the time same was due. There was no error in this. This same question was before the Beaumont court in Accident Co. v. Orchard (Tex. Civ. App.) 227 S. W. 705, in which a writ of error was refused by the Supreme Court, and was decided adversely to appellant. We agree with their conclusion there reached.

Finding no reversible error, the judgment of the trial court is in all things affirmed.

Affirmed.