## TEXAS EMPLOYERS' INS. ASS'N v. OWEN et al. (No. 2754.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 2, 1927. Rehearing Denied March 2, 1927.)

**1. Master and servant ☞417(5)—Whether trucker hauling gravel from pit was independent contractor held correctly submitted to jury.**

Whether deceased was independent contractor *held* correctly submitted to jury, where employer demanded to know before employing deceased class of truck used, advised him of mileage for which he would be paid, directed loading and unloading, designated destination, measured loads, paid weekly on basis of number of cubic yards per mile, and, if truck failed to pull load out of pit, employer hauled it out with team.

**2. Appeal and error ☞882(12)—That definition of "independent contractor" was erroneous held without merit, where court gave special charge prepared by appellant.**

Assignment that court's definition of "independent contractor" was erroneous *held* without merit, where, if erroneous, special charge thereon was prepared and presented by appellant.

**3. Master and servant ☞417(5)—Whether injuries, sustained by truck driver while making change in truck en route, were received in course of employment held for jury.**

Where truck driver, engaged in transporting gravel from pit to suburbs, sustained injuries when truck slipped from jacks, while stopping by side of route to change gear ratio, jury should have been permitted to determine whether injuries were received in course of employment.

**4. Master and servant ☞371—Injury arises "out of employer's work," when it results from risk necessarily, ordinarily, or reasonably inherent in or incident to conduct thereof.**

Injury has to do with and arises out of work or business of employer, when it results from risk or hazard which is necessarily, ordi-

narily, or reasonably inherent in or incident to conduct of such work or business.

**5. Trial ☞350(6)—Refusal of requested issues, whether injuries were received in employer's business, held error, where defense was based thereon (Vernon's Ann. Civ. St. 1925, arts. 2189, 2190).**

Refusal of trial court to submit defendant's requested issue as to whether defendant's injuries were received while engaged in furtherance of his employer's business *held* error, in view of Vernon's Ann. Civ. St. 1925, arts. 2189, 2190, where defense was based on such required issue, since defendant is entitled to have defense submitted to jury affirmatively.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by Mrs. D. J. Owen and others, surviving wife and children of D. J. Owen, deceased, against the Texas Employers' Insurance Association to set aside the final decision of the Industrial Accident Board denying them compensation and to recover as beneficiaries. From the judgment rendered, defendant appeals. Reversed and remanded.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellant.

John F. Evans, of Breckenridge, and Levy & Evans, of Fort Worth, for appellees.

JACKSON, J. This suit was instituted in the district court of Potter county, Tex., by appellees, who are the surviving wife and children of D. J. Owen, deceased, to set aside the final decision of the Industrial Accident Board of this state, denying them compensation, and to recover as beneficiaries against the Texas Employers' Insurance Association, the appellant, for the death of D. J. Owen while engaged as an employee of the McKnight Transfer, Livery & Sales Company, which carried compensation for its employees and their beneficiaries with the appellant.

Appellees alleged that the McKnight Transfer, Livery & Sales Company, hereinafter called the McKnight Company, is a Texas corporation, and that on or about July 21, 1925, while in the employ of said McKnight Company, the deceased, in the course of his employment, by accident received injuries which resulted in his death; that at the time of the accident the McKnight Company was carrying a policy of insurance with the appellant, by the terms of which it was obligated to pay to the beneficiaries of deceased compensation, under the Workmen's Compensation Act of this state (Vernon's Ann. Civ. St. 1925, arts. 8306–8309).

The sufficiency of the pleadings is not questioned, and, without stating more in detail, we deem it sufficient to say that all allegations necessary to a recovery by appellees against appellant were made.

Appellant answered by general demurrer and general denial.

---

At the conclusion of the testimony the case was submitted on special issues, in response to which the jury found, in effect, that D. J. Owen was not an independent contractor; that on July 21, 1925, he was an employee of the McKnight Transfer, Livery & Sales Company, and sustained injuries in the course of his employment which resulted in his death; that the average wages of D. J. Owen was $5 per day; and that the failure to pay compensation to appellees in a lump sum would result in manifest hardship and injustice to them.

On this verdict the court rendered judgment that the adult children recover nothing, and that Mrs. D. J. Owen, the surviving wife of D. J. Owen, deceased, have judgment against appellant for the sum of $2,682.72, with 6 per cent. annual interest thereon from the date thereof, and judgment as next friend against appellant in the sum of $670.68, with 6 per cent. interest from the date thereof for each of the three minor children, from which action and judgment of the court this appeal is prosecuted.

The appellant, based on proper assignments, presents as error the action of the trial court in refusing to peremptorily instruct the jury to find a verdict in its behalf, because the uncontroverted evidence shows that at the time of the accident and injury the deceased was not an employee of the McKnight Company, but was an independent contractor, and that the injuries sustained by the deceased did not originate and were not received by him in the course of his employment, nor while engaged in or about the furtherance of the affairs or business of said company.

The testimony discloses that the McKnight Company is a corporation, and, among other things, is engaged in the transportation of material and commodities for which it owns horses, mules, and automobile trucks; that it had theretofore been engaged in hauling gravel used for improving different streets in the city of Amarillo; that in July, 1925, it had contracts for graveling certain streets in Glenwood, a suburban addition southeast of Amarillo, about 8 miles from the gravel pit, and in San Jacinto Heights, a suburban addition west of Amarillo, about 2½ miles from the pit; that said contracts obligated the company to furnish, transport, and deliver to and on the streets the gravel with which the streets were improved; that the improvements were to be made expeditiously; that to transport the gravel to improve the streets in these respective additions about 28 trucks belonging to a number of different individuals were engaged by it; that the gravel was obtained from a pit about 4 or 5 miles northwest of Amarillo, at which the McKnight Company kept a foreman and some 12 or 15 laborers; that work began at the pit at 7 o'clock a. m. and closed at 5 o'clock p. m.; that the owners of the trucks, or their drivers,

were instructed to be at the pit with their trucks at 7 o'clock a. m., and that work would cease at 5 o'clock p. m.; that the drivers of the trucks on reaching the pit for a load of gravel were, in the order of their arrival, instructed to drive to a certain place in the pit by the foreman of the McKnight Company, who instructed its laborers to load the truck with the kind of gravel, either pit run or screened, which the company desired hauled; that after the truck was thus loaded the foreman gave the driver a ticket and instructed him to carry the load either to San Jacinto Heights or to Glenwood, according to the company's needs; that on arrival at such destination with his load, the company had a foreman there who measured the load on the truck, punched the ticket with the amount thereof, and directed each driver where his load should be dumped; that the company had measured the distance from the gravel pit to the streets it was improving in the respective additions, and agreed with each trucker to pay so much per cubic yard of gravel per mile that was hauled by his truck; that the deceased was not employed for any certain length of time, nor to haul any certain number of cubic yards, but was paid each week on the basis of the number of cubic yards of gravel per mile he had transported; that the company had the right to and did discharge any trucker whose services were not satisfactory; that the McKnight Company in employing truckers, and in its contract with deceased, inquired the kind of truck to be used because it was interested in getting the gravel hauled, but did not require the trucker to follow any specified route to the destination, nor to haul any specified number of cubic yards per day, nor to drive at any particular rate of speed, nor in any particular gear, but paid for the number of cubic yards per mile of gravel delivered, determining the mileage by the measurements theretofore made by the McKnight Company; that the deceased began hauling gravel about the latter part of June, 1925, with two trucks, one driven by himself and the other by one of his sons; that the truck driven by deceased was in good operating condition for hauling lighter material or over other roads, but owing to its gear ratio its lack of power was causing the deceased some trouble in its operation, and on a number of occasions would not pull the load out of the pit, and the foreman of the McKnight Company took a team and pulled the truck out of the pit, time after time; that he had advised the foreman that he was going to fix the truck; that on the morning of July 21, the day on which deceased received his injuries, he and the son not engaged in driving his other truck went to the pit, the truck was loaded, and the gravel carried in the usual way and unloaded; that the deceased and his son decided to change the gear ratio on the truck so as to give it more power, for which purpose they stopped at a

Mr. Barker's, who lived by the side of the route traveled by the truckers, to make the change; that deceased said he was in a hurry to make the change and get back on the job; that the back end of the truck was jacked up, and while the deceased was under the truck it slipped off the jacks or blocks, falling upon him and breaking his back, from which injuries he died on the 10th day of August, thereafter; that the McKnight Company had given no instructions relative to changing the gear ratio of the truck of deceased, furnished none of the tools with which the change was made, had no one present directing the manner or method of making the change, and was not informed that such change was being made; that Mrs. D. J. Owen, the surviving wife of the deceased, owns no real estate and no personal property; that she is living in a small two-room house furnished by her married daughter; that she has an afflicted son and a 10 year old boy, both unable to work, who live with her, and who are supported by her and the two older minor boys; that the minor children own no property; that the trucks with which the deceased was hauling were not paid for and were turned back to the dealer after the death of D. J. Owen; and that to deny a lump sum recovery would result in manifest hardship and injustice to the appellees allowed a recovery.

Without setting out the details thereof, it was agreed between the parties that all the necessary procedure to give to the district court of Potter county jurisdiction to hear and determine this case was regularly and legally had.

Under these facts, was the deceased, as a matter of law, an independent contractor?

That the deceased was furnishing his own truck, was paid so much per cubic yard per mile, was not required to travel any specific route, nor to haul any certain number of cubic yards, nor to travel at any definite rate of speed, nor to operate his truck in any particular gear, are the facts relied on to show that, as a matter of law, the deceased was an independent contractor, and appellant entitled to a directed verdict.

In United States Fidelity & Guaranty Co., v. Lowry (Tex. Civ. App.) 231 S. W. 818, J. S. Lowry, the deceased, was a traveling salesman for the Tom Padgitt Company, and although he was using his own automobile, paying all the expenses incident to his traveling, exercising his own discretion and judgment as to how, when, and where he should travel, receiving no salary and working on a commission, he was held to be an employee and not an independent contractor, and his widow allowed to recover.

In Employer's Indemnity Corporation v. Felter et al. (Tex. Civ. App.) 264 S. W. 137, although Felter had no fixed hours and no fixed place of labor and was his own boss in many details, working early or late according to the circumstances, and upon various streets and alleys, and rode his own motorcycle in performing his work, the court held he was an employee and permitted his beneficiaries to recover.

In Van Simaeys v. George R. Cook Co., 201 Mich. 540, 167 N. W. 925, the injured party had a contract to haul dirt at an agreed price per load for George R. Cook Company, who regulated the hours of work, inspected each load, directed where to get and where to deposit each load, and retained authority to discharge him, and the Supreme Court of Michigan held that the injured party was not an independent contractor but an employee entitled to recover, under the Workmen's Compensation Act.

[1] In the instant case, the McKnight Company, before employing deceased, demanded to know what class of truck he would use, and advised him of the mileage from the pit to San Jacinto and from the pit to Glenwood, for which he would be paid, what hours he could work, directed him where to drive his truck in the pit to be loaded, directed the character of gravel to be hauled each load, loaded the truck and issued him a ticket at the pit, and directed him whether such load should be delivered at Glenwood or at San Jacinto Heights; and on reaching such destination McKnight Company measured his load, punched his ticket, and directed him where it should be dumped; he was not required to haul any specific number of cubic yards, but he was paid weekly on a basis of the number of cubic yards per mile he had hauled; and, if his truck failed to pull the load out of the pit, McKnight Company hauled it out with a team. The deceased was performing unskilled work—manual labor; he was neither building nor producing anything.

Under the facts recited and other circumstances in the record, we are not authorized to hold, as a matter of law, that the deceased was an independent contractor (King v. Galloway [Tex. Com. App.] 284 S. W. 942; M., K. & T. Ry. Co. v. Romans [Tex. Civ. App.] 114 S. W. 157; Wm. Cameron & Co. v. Realmuto, 45 Tex. Civ. App. 305, 100 S. W. 194; Geo. McKinstry v. Guy et al., 116 Kan. 192, 225 P. 743, 38 A. L. R. 837, and annotations); but, in our opinion, the court was correct in submitting to the jury as an issue of fact whether or not the deceased was an independent contractor (Maryland Casualty Co. v. Scruggs (Tex. Civ. App.) 277 S. W. 768, and authorities cited).

[2] The assignment attacking as erroneous the definition of "independent contractor," given by the court in connection with that issue, is without merit, for, if erroneous, the court gave a special charge prepared and presented by the appellant defining "independent contractor."

It is our opinion, therefore, that under the record the trial court was authorized to submit to the jury the question of whether or not the deceased was an independent contractor;

that there was no error in the issue as submitted; and that the finding of the jury that he was not an independent contractor is warranted by the testimony. It follows, from these holdings, that there was no error in the action of the court in submitting whether or not the deceased, at the time of the accident and injury, was in the employ of the McKnight Company, and that the finding of the jury that he was an employee has sufficient support in the evidence.

[3] Appellant insists that the testimony is conclusive that the injuries of the deceased did not originate and were not received in the course of his employment, nor while engaged in or about the furtherance of the affairs or business of the McKnight Company. The testimony tends to show that the McKnight Company, through its foreman, knew that the truck driven by the deceased was without sufficient power for pulling the load of gravel out of the pit; that he had, time after time, assisted the deceased with a team to get the truck with its load of gravel out of the pit; that deceased had advised him that he intended to fix the truck; that the truck had sufficient power for ordinary hauling; that in the morning prior to the accident resulting in the injuries to the deceased he had gone to the pit, obtained a load of gravel, hauled it to Glenwood and unloaded it, and stopped on the route back to the pit to change the gear ratio in his truck for the purpose of increasing its power; that while working with the truck just before the accident he stated he was in a hurry to complete the change in the gear ratio and get back on the job; that while engaged in the change he received the injuries which resulted in his death.

The McKnight Company, according to the verdict of the jury, which we have held was based on sufficient testimony, was the employer of deceased; the employer was engaged in transporting by automobile trucks gravel from a pit which it operated to streets in the suburbs of the city of Amarillo, which it was improving under contract. The deceased, as an employee, was with his truck transporting gravel for the McKnight Company. He stopped by the side of the route traveled to mend the condition of his truck. Should it be held, as a matter of law, that keeping the truck in good condition to haul the employer's gravel and the mending of the truck when out of repair were not incidents inherent to the conduct of the employer's business, and that the injuries did not originate in and were not received in the course of the employment, nor while engaged in the furtherance of the business of the employer?

Suppose, while the deceased was hauling a load of gravel, a tire on his truck had been punctured, he had jacked up the wheel to change the tire, the truck had slipped off the jack and inflicted the injuries. Would the court be required to direct a verdict in behalf of appellant?

[4] Judge Greenwood in Lumberman's Reciprocal Ass'n v. Behnken et al., 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, says:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business."

In our opinion, the jury should have been permitted, under appropriate instructions, to determine, under the record, whether the injuries originated in and were received in the course of the employment and while engaged in and about the affairs or the business of the McKnight Company. Consolidated Underwriters v. Breedlove (Tex. Com. App.) 265 S. W. 128; Employers' Ind. Corp. v. Felter et al. (Tex. Civ. App.) 264 S. W. 137; Texas Employers' Ins. Ass'n v. Thomas (Tex. Civ. App.) 283 S. W. 240, and authorities cited.

[5] The appellant, by proper assignments, challenges as error the action of the trial court in refusing to give, at its request, special issues submitting in effect to the jury whether the injuries received by deceased had to do with and originated in the work, business, or trade of the McKnight Company, and were received while deceased was engaged in and about the furtherance of the affairs or business of said company. In reply to these assignments, the appellees contend that these issues were sufficiently submitted in special issue No. 2, which reads:

"Did the deceased, D. J. Owen, in the course of his employment, at the time and place in question, sustain injuries which resulted in his death?"

Following this issue the court defines "injuries sustained in the course of his employment" substantially in the language of the statutes. This issue, as submitted by the court, was objected to by appellant because it presented a mixed question of law and fact instead of submitting facts from the finding of which the court could determine whether the injuries were received by deceased in the course of his employment. In the absence of the requested issues, the question as propounded by the court, with the definition of "injuries sustained in the course of his employment," would be sufficient. Texas Employers' Ass'n v. Thomas (Tex. Civ. App.) 283 S. W. 240.

Article 2190, Vernon's Ann. Civ. St. 1925, provides that failure to submit an issue shall not be ground for reversal unless it has been requested in writing by the complaining party, Article 2189 provides that a case may be submitted on special issues and that:

"Such special issues shall be submitted distinctly and separately. Each issue shall be answered by the jury separately."

The issue as submitted by the court presents appellee's theory of the case, but does

not submit affirmatively the issues requested by appellant and upon which its defense is based. It defended on the theory that the injuries of deceased did not originate in and were not received in the course of his employment, nor while engaged in the furtherance of his employer's business, and was entitled to have its defense submitted to the jury affirmatively. Fox et al. v. Dallas Hotel Co., 111 Tex. Sup. 461, 240 S. W. 517; Hulen v. Ives (Tex. Civ. App.) 281 S. W. 350; Southern Kansas Ry. Co. v. Wallace (Tex. Com. App.) 206 S. W. 505.

Appellant's other assignments are overruled.

For the errors of the court in failing to submit affirmatively appellant's defense, which was embodied in these special issues, the judgment is reversed and the cause remanded.