## ÆTNA CASUALTY & SURETY CO. v. BLOCK.

### No. 1998.

Court of Civil Appeals of Texas. Eastland. June 21, 1940.

Rehearing Denied July 19, 1940.

R. H. Ratliff and Thomas R. Smith, both of Colorado City, for appellant.

Smith & Smith, of Anson, and Eli Goldstein, of San Antonio, for appellee.

FUNDERBURK, Justice.

Aaron L. Block, employee of L. Zweig doing business under the name of Hub Dry Goods Company, sustained an accidental injury on or about March 1, 1937, in Jones county, Texas. Said employer was subject to the Workmen's Compensation Laws, and the Aetna Casualty & Surety Company was his compensation insurance carrier.

This suit, following the usual preliminary proceedings, before the Industrial Accident Board, was brought by said employee against said insurance carrier to recover compensation for alleged total and permanent disability resulting from said injury and for expenses for medical and surgical

aid, treatment and hospitalization. The issues being duly joined by the pleadings, the case was tried by the jury. A verdict upon special issues was returned in favor of plaintiff. From the judgment thereon the defendant has appealed.

Block will be referred to by name, or as "employee"; the Aetna Casualty & Surety Company as "insurer" and L. Zweig and/or Hub Dry Goods Company as "employer."

Appellant's fourth proposition is as follows: "The uncontroverted evidence showing that plaintiff Block was injured while engaged in buying scrap iron and junk for L. Zweig and not while engaged in the retail dry goods business plaintiff was not covered by the policy issued to Zweig upon his employees in a retail dry goods store, and the court erred in not granting defendant's motion for an instructed verdict." This proposition was asserted under the 17th assignment of error, reading as follows: "The court erred in overruling and not sustaining the defendant's motion for an instructed verdict in this case as requested by the defendant in his requested special charge No. 1."

· In appellant's brief the above proposition is grouped with the first, second and third propositions and the principal reason urged in support of all of them is to the effect that there was no liability because the employee at the time of his injury was not employed in the usual course of the trade, business or occupation of his employer, as provided in R.S.1925, Art. 8309, sec. 1, prior to the amendment of 1937, Vernon's Ann. Civ.St. art. 8309, § 1. Said statute was as follows: " 'Employé' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of, or seamen on vessels engaged in interstate or foreign commerce, and except *one whose employment is not in the usual course of trade, business, profession or occupation of his employer."* (Italics ours.) It was established, without dispute, that the employer, at the time the insurer issued to him its policy of compensation insurance, was engaged in the retail dry goods business. The fact was likewise conclusively shown that later, and prior to the time of the injury, said employer engaged in the junk business, meaning the purchase, shipment and sale of scrap iron. The employee was injured while in the course of his employment in the junk business.

In an opinion herein delivered March 22, 1940, which will be withdrawn and this opinion substituted therefor, covering these four propositions, considered together, we said: "The undisputed evidence showed that a part of the employer's business, or one of his businesses, was that of purchasing scrap iron and junk and that the employee received his injury while performing the duties of his employment, in that business, or part of the business, of the employer. The law in force at the time of the accident (since amended) excepted from the statutory definition of employee any 'one whose employment is not in the usual course of trade, business, profession or occupation of his employer.' R.S.1925, Art. 8309, sec. 1. The quoted provision did not have the effect, we think, as seems to be assumed by the insurer, of restricting the benefits of the compensation law only to cover an employee 'in the usual course of' one 'trade, business, profession or occupation of his employer.' If an employer had more than one 'trade, business, profession or occupation' the employees in each, the necessary conditions existing, would be protected, or not, according to the provisions of one or more policies of the same, or of different insurance carriers. Barron v. Standard Acc. Ins. Co., 122 Tex. 179, 53 S.W.2d 769; United States F. & G. Co. v. Bullard Gin & Mill Co., Tex.Civ.App., 245 S.W. 720; Employers' Ind. Corp. v. Felter, Tex.Civ.App., 264 S.W. 137; Commercial Standard Ins. Co. v. De Hart, Tex.Civ.App., 47 S.W.2d 898. In cases where the employer had more than one business, each within the terms of the compensation laws, the question is not which is the main or principal trade, business or occupation of the employer, or in which of them an employee who received an injury was the most usually engaged. In all such cases the important inquiry is whether the injured party received his injury in the course of his employment 'in the usual course of [a] trade, business, profession or occupation of his employer' as to which the compensation law was applicable and the employer had provided compensation insurance. If the employer is engaged in different trades, business, etc., their relative importance, magnitude, or duration would seem to be immaterial."

In said opinion we further expressed the view that the insurer by said four propositions had not presented the real question which its argument suggested was intended

to be presented, namely: that the policy involved in the suit by its terms applied exclusively to a trade, business or occupation different from, and not connected with, that of the junk business, namely, the retail dry goods business.

It is to be observed that said fourth proposition and the assignment of error under which it is urged, is not dependent upon the validity of the reason given to support the others, namely, that the employee was not engaged at the time of his injury "in the usual course of trade, business, profession or occupation of his employer." It presents the single question whether an employee in a business protected by compensation insurance applicable alone to that business, may recover compensation for an injury received in the course of his employment at the particular time of injury in another and different business of the same employer, but as to which the employer has provided no compensation insurance.

■■ After a thorough re-consideration we have reached the conclusion that said fourth proposition should be sustained. It was shown conclusively that for many years the employer had but one business, which was the retail dry goods business, conducted, however, first at one and later at two or three different places. The compensation insurance carried upon the employees of that business was at a comparatively low rate, based upon the relatively little hazardous character of the business. The evidence leaves no escape from the conclusion that the business designated "store risks retail N. O. C.", to which the insurance applied, was the retail dry goods business, which had been the employer's only business for so many years. The evidence showed that a different and much higher rate was exacted for compensation insurance applicable to the junk business. The employer carrying compensation insurance for his employees in the dry goods business, upon engaging in the junk business, was of the impression that he would require other and different insurance and staked his defense largely upon the contention that the local agents of the insurer had authority to bind the insurer by a declaration alleged to have been made and relied upon that the policy covered the junk busi-

ness. It is deemed unnecessary to cite authority to support the proposition that any employer may procure compensation insurance protecting the employees of a particular business which will be confined to the employees engaged in that business, with the result that if he engages in another and different business and particularly one in which a different rate of premiums is exacted, without procuring compensation insurance for the employees in that business, an employee injured while in the course of his employment therein will not be protected. We have concluded that such is shown to be the situation here involved. Unless the employer became estopped by the representations of its agents to the effect that the policy covered the employee while discharging his duties in the other employment no liability is shown.

■ In the former opinion upon the last mentioned point we said: "If the policy as a matter of fact or law did not include liability for the injury to the employee under the circumstances shown by the evidence most favorable to the employee's right to recover compensation, or according to the verdict of the jury, then we are inclined to the view that no liability was shown based upon estoppel, or, what is the same thing, apparent authority of the agents of the insurer." It is our conclusion that the undisputed evidence showed that the local agents of the insurer upon whose representations the claim of estoppel was predicated were mere soliciting agents without authority to bind the insurer by their representations as to the coverage of the policy of insurance then in effect and protecting solely the employees in the dry goods business.

These conclusions render other questions raised by appellant unnecessary to be determined.

The former opinion of March 22, 1940, and the judgment rendered in connection therewith, as well as the opinion on rehearing dated April 26, 1940, and the order entered in accordance therewith, are all set aside. It being our conclusion that the judgment of the trial court should be reversed and judgment now rendered for the appellant to the effect that the employee Block take nothing by his suit, it is accordingly so ordered.